IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

BURRELL A. McGHEE,

    Plaintiff

v.	Civil Action No. 7:13CV00123

UNITED STATES OF AMERICA,	JURY TRIAL DEMANDED

LOCUMTENENS.COM, LLC,

    Serve: Corporation Service Company
         Bank of America Center, 16th Floor
         1111 E. Main St.
         Richmond, VA 23219

CHARLES ROBERSON, M.D.,

and

JAMES MOITOZA, M.D.,

    Defendants.

## COMPLAINT

1. Plaintiff brings this action pursuant to the Federal Tort Claims Act, codified at 28 U.S.C. § 1346(b) and 28 U.S.C. § 2671 *et. seq.*, as well as under state law, seeking to redress actions taken against Burrell A. McGhee by Drs. Roberson and Moitoza, LocumTenens.com, LLC, and employees and/or agents of the Salem Veterans Affairs Medical Center in Salem, Virginia. Plaintiff seeks compensatory and punitive damages, attorney's fees, pre-judgment and post-judgment interest, and costs.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 1332, 1346(b), and 1367. The claims against the United States are brought under federal law, making jurisdiction proper under 28 U.S.C. § 1331 and 1346(b). This Court has jurisdiction over the claims against Drs. Roberson and Moitoza, and LocumTenens.com, LLC, because of diversity of citizenship, 28 U.S.C. §1332, as well as under this Court's pendent jurisdiction, 28 U.S.C. § 1367.

3. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and 1402(b), as the acts and omissions occurred in the Western District of Virginia, and Plaintiff resides in the Western District of Virginia.

4. All conditions precedent to jurisdiction under the Federal Tort Claims Act have been met. Plaintiff filed a claim for administrative settlement of this matter with the Department of Veterans Affairs. By letter dated January 14, 2013, the Department of Veterans Affairs responded to Mr. McGhee's claim. Thus, suit may be filed in accordance with the Federal Tort Claims Act, specifically 28 U.S.C. § 1346(b), 2671-2680 and 2401(b).

## PARTIES

5. Plaintiff Burrell A. McGhee is a citizen of the Commonwealth of Virginia, residing in Salem, Virginia, in the Western District of Virginia.

6. Defendant United States of America ("USA") is sued under the Federal Tort Claims Act for torts committed by employees and/or agents of the Salem Veterans Affairs Medical Center ("VAMC") in Salem, Virginia. The VAMC is a governmental entity which provides a wide range of medical services to veterans. It is an agent of and operated by the United States Department of Veterans Affairs. At all times relevant to this action, the employees, physicians, administrators, and hospital personnel of the VAMC were employees and/or agents of the

VAMC and were acting within the scope of their employment or agency to further the business of Defendant, USA.

7. Defendant LocumTenens.com, LLC ("Locum"), is an online professional placement company, headquartered at 2655 Northwinds Parkway, Alpharetta, Georgia, 30009, that recruits medical professionals online and, through electronic mail, places them throughout the United States, including at the VAMC. Locum, pursuant to its contract with the Department of Veterans Affairs, placed Defendants Roberson and Moitoza at the VAMC to serve as orthopedic surgeons.

8. Defendant Charles Roberson, M.D. ("Roberson"), a board eligible orthopedic surgeon, at all relevant times was placed by Locum to work, and did so work, as an orthopedic surgeon for the Defendant USA at the VAMC. Roberson is licensed as a medical doctor in the state of Washington and is a citizen of the state of Washington.

9. Defendant James Moitoza, M.D. ("Moitoza"), an orthopedic surgeon, at all relevant times was placed by Locum to work, and did so work, as an orthopedic surgeon for the Defendant USA at the VAMC. Moitoza is licensed as a medical doctor in the state of California and is a citizen of the state of California.

## FACTS

10. The Department of Veterans Affairs and Locum entered into a contract in April 2010 for the provision of physician services at the VAMC. The contract specifically provided that the contractor (Locum) would provide two orthopedic surgeons to provide services in the Medical Care Surgical Service Line at the VAMC from April 1, 2010 through September 30, 2011. The two contract orthopedic surgeons were to be board certified/board eligible, and Locum was to provide two licensed and VETPRO credentialed orthopedic surgeons at all times. The services were to be performed under the direction and supervision of the Salem VAMC Chief of Staff and

3

Chief, Surgical Care Service Line, and in accordance with established principles and ethics of the medical profession established by the Joint Commission and Veterans Affairs regulations. Locum was to be responsible for compliance with all applicable VA Medical Center written policies and procedures. The VAMC supplied the facilities, operating rooms, tools, support staff, nursing staff, and instrumentalities for the work.

11. After specifically obtaining the approval of the VAMC, Locum placed Roberson and Moitoza to serve as the two orthopedic surgeons at the Salem VAMC pursuant to its contract with the Department of Veterans Affairs. (Roberson was hired to replace another doctor who never reported for his duties.) Locum and the VAMC were aware that Roberson was a board eligible orthopedic surgeon who was comfortable with all general orthopedics, but had not done any total joints for three years prior to the start of his contract. Roberson and Moitoza provided services at the VAMC and submitted time sheets to Locum for payment from Locum. Roberson and Moitoza acted under the supervision and direction and as employees and/or agents of the VAMC or, alternatively, as employees and/or agents of Locum.

12. Burrell A. McGhee, a veteran, reported to the VAMC in the early morning of March 30, 2011, for left shoulder impingement syndrome and rotator cuff arthroscopic surgery. The surgery, considered a fairly routine procedure, was expected to last approximately one and a half to two hours.

13. Roberson and Moitoza, who had introduced themselves to Mr. McGhee as VAMC physicians, performed the surgery on Mr. McGhee.

14. After Mr. McGhee was taken to the operating room, an anesthetist employed by the VAMC administered general anesthesia to Mr. McGhee starting at approximately 7:57 a.m., and the operation began at 9:20 a.m. Karen J. Hitesman served as the anesthetist, and Whitney

4

Bateman served as the Assistant Anesthetist. The anesthetist wrapped Mr. McGhee's head and mouth tightly in Coban (tape) to hold his head in the head holding apparatus, so that Mr. McGhee could be brought into the beach chair position for the surgery. During the ultimately lengthy operation, however, the anesthetist and other personnel failed to check the position of the tube and headgear in relation to Mr. McGhee's mouth and facial skin.

15. Other VAMC personnel present in the operating room included Thamiris V. Palacios, Jeanine Verne, John Rowland, Anna Black, Melissa E. Kane, and Brenda Machnic. Jamie, or Jaime, Robertson, a Smith Nephew Sales Representative, was also present in the operating room.

16. After Mr. McGhee was placed under anesthesia, Defendants brought him into the beach chair position for the procedure at approximately 8:10 a.m. At 9:20 a.m., after Mr. McGhee had already been under general anesthesia in the beach chair position for over an hour, Roberson and Moitoza finally began the arthroscopic surgery, which was expected to last for approximately one and a half to, at most, two and a half hours. During the surgery, an agent of the VAMC (Defendant USA) dropped a knot pusher, which was used to tie the knots and complete the procedure arthroscopically. Moitoza then dropped the back-up knot pusher, so that no knot pushers were available to tie the knots and complete the procedure arthroscopically. There was no flash sterilizer in the room, and no back-up equipment could be located. There was no flash sterilizer that could be located upon the premises of the VAMC, despite VA Procedures which require a flash sterilizer in the operating room during surgery, as well as a sterilizer on the hospital premises. During this time, Mr. McGhee remained under general anesthesia in the beach chair position, with the endotracheal tube and head gear around his mouth, both of which were wrapped tightly with Coban. Neither the anesthetist, nor other

5

personnel, ever checked the condition of Mr. McGhee's skin around the tube and/or headgear or adjusted this equipment during the extended period of time.

17. Although the surgical procedure should have taken no more than two to two and a half hours, this routine procedure continued for almost six hours before defendants finally made the decision to switch to open surgery to complete the procedure. Defendants had previously dropped the two knot pushers during the surgery, and neither a sterilized knot pusher, nor a sterilizer, could be located in the facility. Defendants attempted to locate a sterilized replacement for this equipment, delaying the completion of the surgery, even though there were other alternatives for completing the surgery without using a knot pusher. During this six hour period, Mr. McGhee remained under general anesthesia in the beach chair position, which put great stress and strain on Mr. McGhee's lower back, buttocks, and legs. He also remained with the endotracheal tube and head holding apparatus in and/or around his mouth, wrapped tightly with Coban, but Mr. McGhee's skin was not checked during this time period. Mr. McGhee's wife was finally informed by a nurse at 3:05 p.m. that an open procedure would have to be performed.

18. Mr. McGhee then remained in the beach chair position, and under general anesthesia, throughout the duration of the open procedure surgery. The endotracheal tube and head positioning apparatus, wrapped tightly with the opaque Coban, remained in and around Mr. McGhee's mouth and head throughout the entire procedure.

19. The surgery ended at 4:52 p.m., almost eight hours after it was begun and over eight and a half hours after Mr. McGhee was initially placed under anesthesia. Roberson spoke with Mrs. McGhee after the surgery, and said that the surgery had taken so long because of equipment failure and other problems, and that they had been waiting around for the equipment they needed

in order to finish the surgery. He also stated that the needed equipment (the knot pusher) was not going to be available until the next day, so the decision was made to perform open surgery. The surgeon failed to note that there were alternate methods of completing the procedure that would not have required the use of a knot pusher. Regardless, Mr. McGhee had been sedated and in the beach chair position, with the head gear and anesthesia tube in place, throughout the entire length of the surgery.

20. When Mr. McGhee woke up from the surgery, he immediately experienced left hip and buttock numbness, left foot dysesthesias, and severe pain in his left leg. He had a large area of swelling on his chin, and his right lip was swollen and red. Mr. McGhee began experiencing extreme pain in his left hip, with numbness and tingling in his left foot and a constant burning pain radiating the entire length of his left leg. Due to the extremely long period of sedation, VAMC personnel had given Mr. McGhee Narcan to revive him. This medication counteracted the effects of any narcotic pain medications for some time after Mr. McGhee awoke from surgery. A morphine self-administered pump was ordered for Mr. McGhee's pain; however, Mr. McGhee did not receive the pump the night after the surgery. Despite Mr. and Mrs. McGhee's requests, Mr. McGhee was not given any pain medicines until the next day.

21. Mr. McGhee saw Moitoza for a follow-up visit after the surgery. The pain in his hip, buttocks, leg and foot had not subsided, and he had pressure sores on his lip and chin. Moitoza stated that he remembered the surgery because they had not had the tool available to finish the arthroscopic procedure. He related that a nurse had dropped the first knot pusher, he had dropped the second one, and the hospital did not have the equipment to sterilize the knot pusher or finish the surgery. Moitoza recalled that this was the reason they had to switch to open

surgery. Moitoza stated that he believed that Mr. McGhee had nerve compression in his lower back as a result of the long surgery, which was causing the pain in his buttocks, leg and foot.

22. Mr. McGhee was seen as a walk-in patient at the VAMC clinic on April 11, 2011. LPN Karen Hickes noted that he was having inner left foot pain between the heel and great toe and pain in his left hip. The nurse contacted a doctor, who advised Mr. McGhee to be seen in the orthopedic clinic, as the pain could be related to his recent surgery.

23. Mr. McGhee saw Roberson on April 14th. Roberson noted that Mr. McGhee had abrasions to his lower lip and cheek. In fact, Mr. McGhee now has a permanent scar on his lower lip and cheek as a result of the head holding apparatus and endotracheal tube being held tightly in place against his skin with Coban for such a long time during the surgery. Roberson also noted that Mr. McGhee had some numbness involving his left foot and some left hip and foot pain since the surgery. Roberson informed Mr. McGhee that he may have some elements of compressive neuropathy from the beach chair positioning, and that they would give it some time to see if it resolved. Although Mr. McGhee requested to see a neurologist, Roberson told him a neurologist would not provide any different treatment for his pain.

24. The pain did not resolve, and Mr. McGhee returned to the VAMC orthopedic clinic on April 28, 2011. Mr. McGhee told the doctor that pain medications were not touching the pain, and he described the pain as a needle poking in his foot. Mr. McGhee was also experiencing the occasional electrical shock type pain that caused him to jump out of bed. Mr. McGhee was diagnosed with causalgia, neuropathic pain, left posterior tibial nerve. The doctor noted that Mr. McGhee had a compression neuropathy involving the posterior tibial nerve. The doctor, Moitoza, said there was nothing to be done to make the area heal more quickly but prescribed Neurontin for pain.

25. Mr. McGhee was given a walking boot, which allowed him greater mobility, but he still could not sleep. As of May 5, 2011, he still had allodynia of the toes. On May 10, 2011, the neurology attending stated that they "[n]eed to discuss with pain clinic the possibility of a peripheral nerve block for sciatica as [Mr. McGhee's] sciatica was secondary to pressure at the buttock while undergoing surgery in the 'beach chair' position."

26. Through the month of May, Mr. McGhee continued to have extreme hip and foot pain. On May 16, 2011, Roberson prescribed Lyrica, which has significant side effects. On May 24, 2011, the doctors noted that the foot neuropraxia (a condition in which a nerve remains in place after a severe injury although it no longer transmits impulses) had not improved.

27. Mr. McGhee had another orthopedic consult on June 8, 2011. He still had pain and numbness, and although he had been prescribed Lyrica, he continued to experience severe pain. On June 10, 2011, after numerous requests, Mr. McGhee finally had a neurology consult with Dr. Tingler, and the assessment was sciatica. The doctor noted that Mr. McGhee needed a nerve conduction study assessing the paraspinal muscles with EMG as well as in the leg and pain control. However, the only treatment suggested at that time was an MRI, though Dr. Tingler increased the Lyrica dosage.

28. Mr. McGhee had another orthopedic consult on June 23, 2011 and was diagnosed with neuropraxia posterior tibial nerve versus sciatica with causalgia. The doctor, Moitoza, hoped that the Lyrica would control the pain and the nerve would regrow and regenerate in the next three months.

29. A nerve conduction study was administered on August 4, 2011 with abnormal results. There was evidence to support moderately severe left sciatic neuropathy.

30. On August 15, 2011, Mr. McGhee had another neurology consult via telephone. Dr. Tingler in neurology told Mr. McGhee that the MRI and nerve conduction study showed a complication following the surgery of nerve mononeurology.

31. On September 12, 2011, Dr. Tingler noted that Mr. McGhee's EMG and nerve conduction study confirmed evidence of moderately severe left sciatic neuropathy, and further noted that Mr. McGhee suffered with occasional foot drop, continued difficulty with his gait, and that the sciatic neuropathy caused extreme pain and some foot drop. Dr. Tingler advised that if the nerve had not grown back in one year, the nerve damage would most likely be permanent. Dr. Tingler also advised Mr. and Mrs. McGhee that the back, leg and foot injuries were the result of Mr. McGhee being in a prolonged sitting position during the surgery. To date, the nerve has not grown back.

32. Mr. McGhee continues to experience constant burning in his foot moving up the side of his calf to the back of his thigh and up to his hip. He has a constant dull ache in his left hip, numbness in his left foot, and he cannot feel where his foot lands when he steps, which makes walking a significant challenge. Mr. McGhee now walks with a cane for support and continues to have sporadic shooting pains down the length of his left leg with uncontrollable spasms and muscle cramps. Mr. McGhee remains on the highest allowed daily dosage of Lyrica to keep the pain at a bearable level.

33. Mr. McGhee has suffered intense and constant pain through his hip, down his leg and into his foot. This nerve injury, which is a result of the prolonged surgery performed at the VAMC on March 30, 2011, has required and will continue to require medical treatment including but not limited to pain management, consisting in part of injections into his back and high doses of pain medication, including narcotics. Furthermore, Mr. McGhee suffered mouth

pressure sores and blisters, which left a visible scar, as a result of the endotracheal tube that remained in his mouth for the duration of the surgery and/or the failure of VAMC personnel to check the skin around the head positioning apparatus used during the surgery. Mr. McGhee's current pain and impairment is a direct result of the lack of proper treatment, as well as the negligence and deviation from the applicable standard of care by employees, agents and/or contractors of the VAMC and Locum, including but not limited to Roberson and Moitoza.

34. As a result of the injuries Mr. McGhee sustained while a patient at the VAMC undergoing what was to be routine arthroscopic shoulder surgery, Mr. McGhee has suffered from constant and intense pain in his hip, leg and foot, and has permanent scarring on his cheek and lip. His activities have been severely curtailed. He is suffering from anxiety, emotional distress, and insomnia, and he is required to manage his pain through high dosages of pain medication, including narcotics.

## COUNT ONE – NEGLIGENCE

### (Against all Defendants)

35. Plaintiff incorporates by reference herein the preceding paragraphs of this Complaint.

36. Mr. McGhee was under the care and treatment of the VAMC, Locum, Roberson, and Moitoza on March 30, 2011, when he underwent surgery for impingement syndrome and rotator cuff tear to his left shoulder. The VAMC, and its agents and/or employees, Locum, and its agents and/or employees, as well as Roberson and Moitoza, as employees and/or agents of the VAMC or, alternatively, as employees and/or agents of Locum, were under a duty to provide Mr. McGhee with medical treatment and care in compliance with the standard of care existing in this Commonwealth. This duty was breached as more particularly set forth below.

37. The care and treatment which the VAMC and its agents and/or employees, Locum and its agents and/or employees, Roberson, and Moitoza provided to Mr. McGhee deviated from the applicable standard of medical care and treatment. Specifically, Defendants substantially exceeded the upper limit of any acceptable time in which to perform such a surgery, either through arthroscopic means, open surgery, or any combination of the two methods. As a result, Mr. McGhee remained in the beach chair position for an unacceptably long period of time. Also, employees and/or agents of the VAMC allowed the endotracheal tube and head positioning apparatus to remain around Mr. McGhee's mouth and head for an unacceptably long period of time without performing any checks of his skin, thereby causing pressure sores and scarring.

38. The acts and omissions of Defendants and their employees and/or agents in failing to provide proper medical treatment and care during Mr. McGhee's surgery deviated from the applicable standard of medical care and treatment and were wrongful and negligent. Defendants and their employees and/or agents were acting within the scope of their employment or agency and had a duty to exercise adequate care and provide appropriate medical treatment.

39. Defendants and their employees and/or agents breached this duty when they failed to provide adequate medical care, negligently failed to properly perform the surgery for impingement syndrome and rotator cuff tear, and negligently failed to properly position, check and remove the anesthesia tube and head positioning apparatus.

40. As a result of Defendants' negligence, Mr. McGhee was exposed to unreasonable risks of harm and inadequate care and treatment. He has experienced severe and ongoing pain, scarring, suffering, permanent physical consequences, emotional distress, anxiety, depression, humiliation, loss of income, medical expenses and other suffering as a result of the actions of the

VAMC and its employees and/or agents, Locum and its employees and/or agents, Roberson and Moitoza.

41. Locum, through its employees and/or agents, VAMC (USA) employees and/or agents, Roberson and Moitoza failed to provide Mr. McGhee with that degree of skill and diligence practiced by a reasonably prudent practitioner in their field of practice or specialty in this Commonwealth.

42. Negligently exceeding the upper limit of the acceptable time to complete the impingement syndrome and rotator cuff tear surgery, either through arthroscopic surgery, open surgery, or any combination of the two methods, while leaving a patient under general anesthesia in the beach chair position throughout, falls below the level of skill and practice exercised by reasonably prudent surgeons. Also, negligently failing to check the skin in and around the endotracheal tube and head positioning apparatus falls below the level of skill and practice employed by a reasonably prudent anesthetist.

43. These negligent breaches of duty by Locum, Roberson, Moitoza and other federal employees and/or agents occurred while they were acting within the scope of their employment and/or agency. Defendants and their employees and/or agents failed to exercise the appropriate degree of skill, care and diligence.

44. The negligence of Roberson, Moitoza, Locum, and employees and/or agents of the USA in failing to provide adequate medical care and treatment was the direct and proximate cause of Mr. McGhee's injuries.

45. Under the laws of the Commonwealth of Virginia, a private person would be liable to Plaintiff for these negligent acts and omissions. In accordance with 28 U.S.C. § 1346(b), the USA is liable to plaintiff for his damages.

13

46. To the extent that Roberson and Moitoza were acting within the scope of their employment and/or agency with Locum, Locum is liable for their negligent actions under a theory of *respondeat superior.*

WHEREFORE, Plaintiff requests damages as follows:

A. For Count I, jointly and severally against all Defendants, compensatory damages in the amount of ten million dollars ($10,000,000.00);

B. For reasonable attorney's fees, expert fees, costs incurred in prosecuting this action, pre-judgment and post-judgment interest, and any other costs and fees deemed proper; and

C. For such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on issues raised in this Complaint.

Respectfully submitted,

BURRELL A. McGHEE

By: /s/ *John P. Fishwick, Jr.*
Counsel

John P. Fishwick, Jr. (VSB 23285)
Carrol M. Ching (VSB 68031)
Monica L. Mroz (VSB 65766)
LichtensteinFishwick PLC
101 South Jefferson Street, Suite 500
Roanoke, Virginia 24011
(540) 345-5890 Telephone
(540) 345-5789 Facsimile
jpf@vatrials.com
carrol@vatrials.com
monica@vatrials.com

14