CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 24 2014

JULIA C. DUDLEY, CLERK,
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| BURRELL A. McGHEE, | ) | Civil Action No. 7:13-CV-00123 |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| UNITED STATES OF AMERICA, et al., | ) | |
| | ) | By: Samuel G. Wilson |
| Defendants. | ) | United States District Judge |

The plaintiff, Burrell A. McGhee, filed this medical malpractice action against the United

States under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671-2680, and

LocumTenens.com, LLC ("Locum") (a physician staffing agency) and two doctors under the

court's supplemental, 28 U.S.C. § 1367, and/or diversity jurisdiction, 28 U.S.C. § 1332.

McGhee asserts claims against the doctors individually and as employees of the United States

and Locum. The United States has moved to dismiss claims against it arising out of the doctors'

actions because, it asserts, they were independent contractors rather than employees. For the

reasons that follow, the court grants the United States' motion.

I.

McGhee filed a complaint in this court, alleging that on March 30, 2011, while a patient

at the Veterans Affairs Medical Center in Salem, Virginia ("VAMC"), the doctors negligently

performed his arthroscopic shoulder surgery, resulting in permanent nerve damage, continuous

pain in his lower body, and scarring on his neck and face.[1]

---

[1] McGhee also alleges negligence by other VAMC staff members whose employment status the
United States does not dispute.

The United States moved to dismiss pursuant to 12(b)(1) and 12(b)(6), asserting that it was immune from liability for the doctors' actions because they were independent contractors, not VAMC employees, and it has not waived sovereign immunity for the actions of independent contractors. The court held a hearing, took the motion under advisement, and entered an order permitting limited discovery on the issue. After conducting discovery, the United States moved for summary judgment and, in support of its motion, submitted five deposition transcripts and numerous exhibits, and McGhee responded.

According to the undisputed evidence, the doctors began working at the VAMC about a year before McGhee's surgery, under contracts: between the VAMC and Locum; and between Locum and each doctor. The VAMC-Locum contract stated: "It is expressly agreed and understood that this is a non-personal services contract, as defined in Federal Acquisition Regulation (FAR) 37.101,[2] under which professional services rendered by the Contractor or its health-care providers are rendered in its capacity as an independent contractor." (ECF 64-9 at 27) According to that contract's express provisions, the United States retained "no control over professional aspects of the services rendered, including by example, the Contractor's or its health-care providers' professional medical judgment, diagnosis, or specific medical treatments." (ECF 64-9 at 27) Each Locum-doctor contract, in turn, provided that each doctor would be "at all times acting and performing as an independent contractor of [Locum]," and required to "exercis[e] medical judgment as [he] deem[ed] appropriate." (ECF 64-9 at 1, 3)

The VAMC selected the doctors after Locum pre-screened them and sent their curricula vitae to the VAMC, along with those of other doctors who met the qualifying criteria. (Cuttle

---

[2] Federal Acquisition Regulation 37.101 defines a "non-personal services contract" as "a contract under which the personnel rendering the services are not subject, either by the contract's terms or by the manner of its administration, to the supervision and control usually prevailing in relationships between the United States and its employees." 48 C.F.R. §37.101.

Dep. at 13) According to James Cuttle, a former account executive and recruiter for Locum, if the VAMC no longer wanted to work with a particular doctor, Locum would simply fill the vacancy with another doctor. (Cuttle Dep. at 61) When the two doctors began working at the VAMC, the VAMC provided computer training, a dictation system, an ID for navigating the building, and office space that the doctors rarely used.[3] (Roberson Dep. at 45-7, 51; Moitoza Dep. at 38, 41) Although the VAMC scheduled patients, the doctors could supply their own medical tools[4] and refer patients within the VAMC.[5] (Moitoza Dep. at 20) According to Larry Lipscomb, M.D., a VAMC employee, the doctors introduced themselves – and VAMC staff introduced them – to patients as "locums," a term commonly used at the VAMC to identify non-permanent physicians.[6] (Lipscomb Dep. at 29)

The VAMC did not pay the doctors. Rather, the VAMC paid Locum based on the doctors' timecards,[7] and then Locum paid the doctors an hourly rate with additional compensation for "on call" time and certain expenses.[8] (Cuttle Dep. at 15) Neither the VAMC nor Locum was responsible for withholding the doctors' taxes. (Moitoza Dep. at 22-3; Roberson Dep. at 18) Locum paid for their medical malpractice liability insurance, and the doctors were responsible for their own worker's compensation benefits, health insurance, and retirement plans. (Moitoza Dep. at 22-3; Roberson Dep. at 18)

---

[3] The doctors did not hold administrative positions (e.g. Chief of Orthopedics) at the VAMC.
[4] Dr. Moitoza supplied his own loupes, surgery caps, and operating room shoes.
[5] Authorization was only required when referring a patient outside of the VAMC as this "costs money." (Lipscomb Dep. At 26-7)
[6] Locum Tenens means "one filling an office for a time or temporarily taking the place of another —used especially of a doctor." "Locum Tenens." *Merriam-Webster.com*, http://www.merriam-webster.com/dictionary/locum%20tenens (last viewed January 26, 2014). See Blevins v. Sheshadri, 313 F. Supp. 2d 598, 600 (W.D. Va. 2004) (finding that a nurse "held a locum tenens (temporary fill-in) position at the hospital").
[7] The doctors worked eight hour days at the VAMC.
[8] Locum also paid for the doctors' rental housing and a rental car. (Cuttle Dep. at 31)

## II.

The United States has moved to dismiss and for summary judgment, arguing that the

doctors were independent contractors, not VAMC employees, because the VAMC did not have

the power under the contracts to supervise their day-to-day operations and control the exercise of

their medical judgments. The court finds that the relationship between the VAMC and the

doctors bears none of the hallmarks of an employer-employee relationship and grants the

government's motion to dismiss McGhee's FTCA claims arising out of that relationship.[9]

The FTCA provides "a limited waiver of sovereign immunity, making the Federal

Government liable to the same extent as a private party for certain torts of federal employees

acting within the scope of their employment." United States v. Orleans, 425 U.S. 807, 813

(1976). The plain language of the FTCA precludes imputing liability for actions of independent

contractors.[10] Wood v. Standard Products Co., Inc., 671 F.2d 825, 829 (4th Cir. 1982). Whether

an individual is a government employee or an independent contractor is a question of federal

law. Logue v. United States, 412 U.S. 521, 528 (1973). The Fourth Circuit has applied a

"control test" to physician-contractors, stating: "only where the Government has the power under

---

[9] The parties have agreed that no evidentiary hearing is required and submitted the issue for a decision based on depositions and exhibits. The court considers the issue under Rule 12(b)(1) because "[i]f the persons in question were independent contractors and not government employees, then the government has not waived its immunity and is not subject to suit in this court" based on their conduct. Kramer v. United States, 843 F. Supp. 1066, 1068 (E.D. Va. 1994); Robb v. United States, 80 F.3d 884, 887 (4th Cir. 1996); see also Williams v. United States, 50 F.3d 299, 304-05 (4th Cir. 1995) (holding that the district court should have dismissed for want of jurisdiction under 12(b)(1) rather than granting summary judgment when the government did not waive its immunity under the FTCA). Even though the court will grant the United States' motion to dismiss under 12(b)(1), the court has afforded McGhee the benefit of all of the procedural protections of a motion for summary judgment. See Lufti v. United States, No. 11-1966, 2013 WL 1749526, at 4-6 (4th Cir. April 24, 2013) (citing Kerns v. United States, 585 F.3d 187, 195 (4th Cir. 2009)).

[10] "The FTCA, as a waiver of sovereign immunity, is strictly construed, and all ambiguities are resolved in favor of the sovereign." Robb v. United States, 80 F.3d 884, 887 (4th Cir. 1996) (citing United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992))

4

the contract to supervise a contractor's 'day-to-day operations' and 'to control the detailed

physical performance of the contractor' can it be said that the contractor is an employee or agent

of the United States within the [FTCA]." Wood, 671 F.2d at 829, 832. This does not mean, as

that court has stated, "that a physician must always be deemed an independent contractor simply

because of the necessity that a physician exercise independent professional judgment in

providing medical treatment to his or her patients." Robb v. United States, 80 F.3d 884, 889 (4th

Cir. 1996). Rather, the Fourth Circuit has considered a multitude of potentially relevant factors

intended to distill the application of the control test in the physician context.[11] Id.

Guided by this framework, the court examines the relationship between the VAMC and

the doctors. In that regard, the VAMC had no contract with the doctors, and the doctors had no

obligation to the VAMC. Both the VAMC-Locum contract and the Locum-doctor contracts

---

[11] Holding that the physicians were independent contractors, the Fourth Circuit considered:
> (1) that the physician under the contract was referred to as a "contract physician," (2) that the physician was to provide "outpatient" care, (3) general statements concerning the manner and quality of service required under the contract, (4) the lack of control by the government over the prescription of drugs and medical supplies, (5) the authority of the physician to make referrals, (6) contractual requirements for office hours and the ability of the physician to decline to see patients, (7) the physician's responsibility to provide office space, support staff, supplies, and equipment, (8) the percentage of the physician's total practice which was devoted to activities under the contract, (9) the nature of the compensation to the physician, including method (fee schedule) and rates (similar to the physician's usual fees), (10) [the alleged employer's] recordkeeping requirements, (11) prescribed methods of verifying patient eligibility for treatment, and (12) the extent of [the alleged employer's] review of the physician's offices.

Robb, 80 F.3d at 889 (citing Wood, 671 F.2d. at 830 & n. 10). Using similar analysis, numerous courts have held that physicians providing medical services at federal facilities are independent contractors under the FTCA. See, e.g., Carrillo v. United States, 5 F.3d 1302, 1305 (9th Cir. 1993); Broussard v. United States, 989 F.2d 171, 178 (5th Cir. 1993); Leone v. United States, 910 F.2d 46, 51 (2d Cir. 1990).

expressly provided that the doctors were independent contractors, and the doctors acted as such by maintaining sole discretion over their medical judgment. There is no evidence suggesting that the VAMC exercised more than minimal control over "the peripheral, administrative details" incidental to the doctors' day-to-day provision of medical services. Robb, 80 F.3d at 888-91 (citing Wood, 671 F.2d at 832); see also Cilecek v. Inova Health Sys. Servs., 115 F.3d 256, 260 (4th Cir. 1997) (holding that a physician was an independent contractor under Title VII even though the hospital controlled "administrative details").

Apart from lacking control of the doctors' performance of the core aspects of their responsibilities, and also in contrast to a typical employer-employee relationship, the VAMC did not pay the doctors, withhold the doctors' taxes, or provide the doctors with employment benefits like medical malpractice insurance. See Kramer v. United States, 843 F. Supp. 1066, 1070 (E.D. Va. 1994) ("Payment from the government to a health care entity which in turn compensates the individual health care provider on its own terms is an indicator of independent contractor status."); MacDonald v. United States, 807 F. Supp. 775, 779-80 (M.D. Ga. 1992). Because core aspects of an employer-employee relationship were absent, the court finds that the doctors were independent contractors.

McGhee argues that the doctors were employees because the VAMC scheduled patients, set their daily work hours, provided surgical facilities and equipment, and required the doctors to use the VAMC dictation system. This argument, however, improperly focuses the control analysis on "the peripheral, administrative details which were incidental to the rendering of medical services" and not on "the control over the performance of the medical services." Robb, 80 F.3d at 888-91 (quoting from Wood, 671 F.2d at 831). "The real test is control over the primary activity contracted for and not the peripheral, administrative acts relating to such

activity." Id. at 889; see also Cilecek, 115 F.3d at 260 (recognizing that "a hospital must assert a degree of conflicting control over every doctor's work – whether an employee, [or] an independent contractor").

McGhee also asserts the doctors were employees because the VAMC required them to comply with its bylaws, policies, and procedures in exchange for medical privileges. But, as one court has noted, "[s]urely, being subject to [a] hospital's rules as a condition of staff privileges does *not* remotely make a private physician an employee of that hospital." Lilly v. Fieldstone, 876 F.2d 857, 860 (10th Cir. 1989) (holding that a physician was an independent contractor); see also Orleans, 425 U.S. at 815 ("[T]he question here is not whether the [alleged government employee] receives federal money and must comply with federal standards and regulations, but whether its day-to-day operations are supervised by the Federal Government."); Robb, 80 F.3d at 888.[12]

---

[12] McGhee also maintains that the court should apply an "agency by estoppel" theory and relies on Gamble v. United States, 648 F. Supp. 438, 439 (N.D. Ohio 1986), in which the administratrix of a patient's estate brought a medical malpractice action against the United States based on the alleged negligence of an anesthesiologist during an operation on the patient at a VA hospital. Id. at 439-40. In holding that the United States was equitably estopped from asserting that the anesthesiologist was not a government employee, that court specifically stated that the anesthesiologist held himself out to be the chief of anesthesiology services at the VA (with the VA's consent). Id. at 441. Unlike the doctor in Gamble, the doctors in this case did not hold or purport to hold an administrative position within the VAMC. Gamble is therefore inapposite and, in any case, "[e]quitable estoppel is rarely valid against the government" and seems ill fitted to establish jurisdiction. See, e.g., Linkous v. United States, 142 F.3d 271, 277 (5th Cir. 1998); Del Valle v. Sanchez, 170 F. Supp. 2d 1254, 1272 (S.D. Fla. 2001). The question before the court is a jurisdictional question as to whether the United States has waived sovereign immunity. That question turns on whether the two doctors are employees under principles of estoppel. They remain precisely what they are. Rather, when estoppel is applied, it precludes on equitable grounds the estopped party from taking a contrary position. It does not alter that party's status. Consequently, it is not a sufficient vehicle to effect a waiver of sovereign immunity.

At the end of the day, under the contracts and in practice, the doctors had all of the

hallmarks of independent contractors, and McGhee has marshaled nothing substantial to

overcome that conclusion.

III.

For the foregoing reasons, the court will grant the government's motion to dismiss

McGhee's claims founded on the actions of the two doctors under 12(b)(1).


**ENTER**: February 24, 2014.

_____
UNITED STATES DISTRICT JUDGE